```
IN THE UNITED STATES DISTRICT COURT

    FOR THE DISTRICT OF HAWAII

SANACT, INC.,                    )   CIVIL NO. 16-00377 HG-RLP
                                 )
         Plaintiff,              )
                                 )
     vs.                         )
                                 )
US PIPELINING LLC,               )
                                 )
         Defendant.              )
_____)
```

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

Plaintiff Sanact, Inc., doing business as Roto Rooter, ("Sanact") filed a Complaint against Defendant US Pipelining LLC ("US Pipelining").

Defendant US Pipelining served as a subcontractor to the general contractor, Johnson Controls, Inc., on a construction project at the Kaanapali Alii condominium complex on the island of Maui.

Plaintiff Sanact provided Defendant US Pipelining with specialized subcontractor work and is seeking to recover payment for services that were furnished to Defendant US Pipelining.

The Parties stipulated to submit the case for decision by the Court based on their Trial Briefs and a set of 20 jointly filed Exhibits.

To the extent any findings of fact are more properly characterized as conclusions of law, or any conclusions of law are more properly characterized as findings of fact, they shall be so construed.

1

**FINDINGS OF FACT**

**THE PARTIES**

1. Sanact, Inc. ("Sanact"), a California corporation, is registered to do business in the State of Hawaii as a foreign corporation, and does business under the tradename "Roto Rooter."

2. Defendant US Pipelining LLC ("US Pipelining"), a Pennsylvania limited liability company, is registered to do business in the State of Hawaii as a foreign limited liability company.

3. The Association of Apartment Owners of Kaanapali Alii, a condominium complex on the island of Maui, hired Johnson Controls, Inc. as the general contractor to do a renovation on the complex.

4. Johnson Controls, Inc. retained US Pipelining as a subcontractor to internally reline more than 27,000 feet of vertical stacks of plumbing pipes. The work involved four buildings, each at least ten floors high.

**CONSTRUCTION PROJECT**

5. The work was performed at 50 Nohea Kai Drive, Lahaina, Maui, Hawaii 96761, otherwise identified as Tax Map Key No. (2)4-4-008-022-0000 ("the Property") in the County of Maui, State of Hawaii.

6. The plumbing pipes at the Property were in poor condition. The pipes required extensive hydro-jetting and other speciality cleaning methods prior to lining and repair by US

Pipelining.

**COMMUNICATIONS BETWEEN US PIPELINING AND SANACT**

7. During the course of the Project, US Pipelining found it necessary to retain the services of Sanact in support of US Pipelining's work at the Property.

8. Jeremy Bowman was US Pipelining's President and was the primary person responsible for engaging Sanact.

9. In August 2015, Jeremy Bowman asked Rodney Wray, the President of Sanact, to perform pipe cleaning services on the Property. The pipe cleaning services required Sanact to provide labor and equipment to operate drain cleaning machines, a trail-jetter, a hydro-jetter, and to perform plumbing repair services.

10. Specifically, Sanact was instructed by US Pipelining to clean out all of the rust and calcium deposits on all of the lines in the Project. Sanact was required to use a camera to verify that the lines were clean and to present US Pipelining with a DVD containing photographic evidence that each line was cleared so that US Pipelining could reline the pipes.

11. The Parties agreed that Sanact would bill US Pipelining on a time-basis for actual work performed, in return for which US Pipelining agreed to pay Sanact in full per the invoices.

12. Sanact's cleaning process was an essential step necessary before US Pipelining could reline the pipes.

13. No written contract was entered into between US Pipelining and Sanact.

**PERFORMANCE BY SANACT**

14. Sanact performed as requested by providing manpower, materials, and equipment for the Project, dedicating laborers during both day and night shifts. Sanact completed the work by operating drain cleaning machines, a trail-jetter, a hydro-jetter, and conducting various plumbing repair services at the Property from September 2, 2015 through November 9, 2015 as requested by US Pipelining.

15. US Pipelining has admitted that there were no significant deficiencies in Sanact's work for US Pipelining, "other than minor issues which were addressed and rectified in the course of ordinary business." (Defendant US Pipelining's Answers to Interrogatories at p. 10, Exhibit 8).

16. There has been no objection by Johnson Controls, Inc. to any of the work performed by Sanact.

17. Sanact performed all the work on the Property requested by US Pipelining.

**INVOICES SENT FROM SANACT TO US PIPELINING**

18. Sanact regularly presented invoices to US Pipelining and sought payment for its work on the Property. (Exhibits 1-4).

19. The invoices charged for each laborer at a rate of $150.00 per hour for the first eight hours per day and $172.50 per hour after eight hours of work. (Exhibit 2).

20. The invoices provided that, "[i]f not paid within 30

days following the date indicated above, a service charge of 1 1/2% per month will be charged on overdue accounts, which is 18% annually." (Exhibit 3).

21. Sanact sent US Pipelining invoices for each day of work performed. The date on the invoice was the same date that the work was performed.

22. Sanact sent US Pipelining invoices for all of the work performed from September 2, 2015 through November 9, 2015. (Exhibits 1-3).

**US PIPELINING PAID SANACT FOR WORK SANACT COMPLETED FROM SEPTEMBER 2, 2015 TO OCTOBER 5, 2015 IN ACCORDANCE WITH THE INVOICES**

23. US Pipelining paid Sanact a total of $94,639.60 for work Sanact performed during the time period from September 2, 2015 through October 5, 2015. (Exhibit 4).

24. On October 1, 2015, US Pipelining made a payment of $9,140,65 for the invoices dated September 14, 17, 18 and 21, 2015. (Exhibit 4).

25. On October 5, 2015, US Pipelining made a payment of $4,114.59 for the invoices dated September 2 and 10, 2015. (Exhibit 4).

26. On October 28, 2015, US Pipelining made a payment of $81,384.36 for the invoices dated September 21, 22, 23, 25, 26, 28, 29, and 30, 2015, and October 1, 2, 3, and 5, 2015. (Exhibit 4).

5

**US PIPELINING DID NOT PAY SANACT FOR WORK SANACT COMPLETED FROM OCTOBER 6, 2015 TO NOVEMBER 9, 2015**

27. US Pipelining has not paid for work performed by Sanact from October 6, 2015 through November 9, 2015.

28. US Pipelining has not made any further payments to Sanact after its last payment made on October 28, 2015.

29. US Pipelining has not paid for the outstanding invoices dated from October 6, 2015 through November 9, 2015. (Exhibit 4).

30. There are 26 outstanding invoices for work Sanact performed on October 6, 7, 8, 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, 30, 2015; and November 2, 3, 4, 5, 6, and 9, 2015. (Exhibit 3).

31. Sanact completed the entirety of its work for US Pipelining on November 9, 2015, and sent its final invoice to US Pipelining on the same date. (Exhibit 3).

**UNSIGNED PROFFERED AGREEMENT MODIFIED BY SANACT**

32. The only evidence of an attempt to enter into a written agreement are two identical copies of a document entitled, "SUBCONTRACTOR AGREEMENT". (Exhibits 6 and 7). The document bears the fax number of US Pipelining and a sent date of November 9, 2015, at 4:10 p.m., on the top of the first page.

33. The date on the document indicates that US Pipelining sent the document to Sanact after Sanact had already completed all of its work on the Property.

34. US Pipelining did not sign the "SUBCONTRACTOR AGREEMENT" before providing it to Sanact.

35. Sanact did not agree to the document's terms. Sanact made significant changes to the document, initialed the changes, signed the document on November 12, 2015, and returned it to US Pipelining. (Exhibits 6 and 7). The multiple changes included voiding §26 on Collective Bargaining Agreements; voiding §36 on Waiver of Liens and Releases; changing §37 on the Applicable State Law; and changing the Scope of Work provision in Attachment A.

36. US Pipelining did not sign the document entitled, "SUBCONTRACTOR AGREEMENT" when it was returned to it.

37. There was no "pay-when-paid" language in the proffered "SUBCONTRACTOR AGREEMENT." The document had no provision stating that Sanact would not be paid by US Pipelining until Johnson Controls, Inc. paid US Pipelining.

**THERE WAS NO AGREEMENT FOR SANACT TO BE PAID BY US PIPELINING ON A "PAY-WHEN-PAID" BASIS**

38. US Pipelining claims that it is owed money by Johnson Controls, Inc. US Pipelining sued Johnson Controls, Inc. in <u>U.S. Pipelining LLC v. Johnson Controls, Inc.</u>, <u>16-cv-00132 HG-RLP</u> in the United States District Court for the District of Hawaii. US Pipelining and Johnson Controls, Inc. are currently scheduled for arbitration proceedings on December 3, 2018. (Status Report, ECF No. 195 filed in 16-cv-00132 HG-RLP).

39. US Pipelining has not paid the outstanding balance of the invoices sent by Sanact from October 6, 2015 through November 9, 2015.

40. US Pipelining argues that payment is not due because Sanact agreed to payment on a "pay-when-paid" basis. Specifically, US Pipelining alleges that Sanact agreed that US Pipelining would not have to pay Sanact for its completed work until US Pipelining was paid for it by Johnson Controls, Inc.

41. There is no written evidence in the record that Sanact agreed to receive payment on a "pay-when-paid" basis. Nor is there any other proof that Sanact agreed it would not receive payment from US Pipelining until US Pipelining received payment from Johnson Controls, Inc.

42. The Court finds that the October 27, 2015 and December 21, 2015 phone calls initiated by Kelly Galvez, a Sanact employee, to Lisa Bowman, a US Pipelining employee, do not support a finding that Sanact agreed to payment on a "pay-when-paid basis." (Exhibits 18, 20).

43. The Court also finds that the November 20, 2015 Jeremy Bowman voicemail to Ms. Galvez does not demonstrate the existence of a "pay-when-paid" agreement by Sanact. (Exhibit 19).

44. The calls by Ms. Galvez were requests for payment from US Pipelining based on the invoices sent from October 6, 2015 through November 9, 2015.

45. US Pipelining stated in both phone calls and the voicemail that it was unable to pay because it was awaiting

8

payment from Johnson Controls, Inc.

46. The calls were a request for payment by Sanact. The calls were not a re-negotiation of the terms of the Parties' agreement.

47. There was no new consideration offered in the calls to support a finding of an agreement by Sanact to be paid on a "pay-when-paid" basis.

48. Sanact never agreed to wait to receive payment until Johnson Controls, Inc. paid US Pipelining.

49. The agreement did not contain a provision requiring that Sanact would receive payment only after Johnson Controls, Inc. paid US Pipelining.

**SANACT'S DEMAND FOR PAYMENT**

50. Following completion of work on November 9, 2015, Sanact sought payment from US Pipelining for the 26 unpaid invoices sent from October 6, 2015 through November 9, 2015.

51. On December 18, 2015, Sanact sent copies of all 26 unpaid invoices and a summary of the amounts owed to US Pipelining. Sanact sought a total of $123,203.16. (Exhibit 5).

52. Sanact included a demand for 1 1/2% interest for $1,848.03 in late fees as of December 18, 2015. (Exhibit 5).

**SANACT CONTACTED JOHNSON CONTROLS, INC. CONCERNING US PIPELINING'S FAILURE TO PAY**

53. On December 18, 2015, Sanact sent copies of all the

9

unpaid invoices to the contractor Johnson Controls, Inc. (Exhibit 9).

54. Sanact sought payment from Johnson Controls, Inc. as an alternative means of receiving payment for the work completed from October 6, 2015 through November 9, 2015.

55. On December 23, 2015, Johnson Controls, Inc. sent an e-mail and a letter to US Pipelining. The communications stated that Johnson Controls, Inc. had been notified that US Pipelining refused to pay Sanact for work performed at the Kaanapali Alii project based on US Pipelining's contention that it has not been paid by Johnson Controls Inc. (Exhibits 10 and 11).

56. Johnson Controls, Inc. stated in its communications that US Pipelining had been paid $1,812,305.21 by Johnson Controls, Inc. (Id.) Johnson Controls, Inc. instructed US Pipelining "to promptly resolve this matter." (Id.)

57. Johnson Controls, Inc. sent letters to US Pipelining and its surety, SubGallagher Investment Trust, on October 1, 2015, entitled "Notice of Default and Opportunity to Cure," stating that US Pipelining was in default of its contractual obligations with Johnson Controls, Inc. (Exhibits 12 and 13).

**THE OUTSTANDING BALANCE ON THE INVOICES OWED BY US PIPELINING TOTALED $123,203.16**

58. On January 19, 2016, Sanact made a formal written demand to US Pipelining for payment of the invoices dated from October 6, 2015 through November 9, 2015. (Exhibits 14 and 15).

59. US Pipelining has not made any payment to Sanact after October 28, 2015, despite Sanact's continued demand for payment.

60. On February 19, 2016, Sanact sent a letter to US Pipelining, stating that it would pursue a lawsuit if payment was not made. (Exhibits 16 and 17).

61. On June 20, 2016, Sanact filed its Complaint against US Pipelining in the Circuit Court for the Second Circuit, State of Hawaii.

62. On July 8, 2016, US Pipelining removed the case to the United States District Court for the District of Hawaii on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## CONCLUSIONS OF LAW

**JURISDICTION, VENUE, AND CHOICE OF LAW**

1. The federal Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332. (Court's Order dated June 29, 2018, ECF No. 72).

2. Venue is proper in the United States District Court for the District of Hawaii. (Court's Order dated June 29, 2018, ECF No. 72).

3. A federal court sitting in diversity jurisdiction applies the forum state's choice-of-law principles in determining which substantive law applies. Welles v. Turner Entm't Co., 503 F.3d 728, 738 (9th Cir. 2007). Hawaii state law requires the Court to look to the State with the most significant relationship

11

to the parties and subject matter in a choice-of-law analysis. Mikelson v. United Servs. Auto. Ass'n, 111 P.3d 601, 607 (Haw. 2005).

4. Hawaii has the most significant relationship to the case as it is the location where the services were provided by Sanact to US Pipelining. The Court shall decide the case based on the law of the State of Hawaii.

**NO WRITTEN CONTRACT BETWEEN THE PARTIES**

5. There must be mutual assent on all essential terms in order to create a binding contract. Earl M. Jorgensen Co. v. Mark Constr., Inc., 540 P.2d 978, 982 (Haw. 1975).

6. Mutual assent is determined by an objective standard. A party's words or acts are judged under a standard of reasonableness in determining whether it has manifested an objective intention to agree. Earl M. Jorgensen Co., 540 P.2d at 982.

7. Defendant US Pipelining takes the position that the contract in this case consists of the document entitled "SUBCONTRACTOR AGREEMENT" that was sent to Sanact on November 9, 2015. (Exhibits 6 and 7). The Court finds that the SUBCONTRACTOR AGREEMENT does not constitute a binding contract.

8. There was no meeting of the minds or mutual assent to the essential terms stated in the SUBCONTRACTOR AGREEMENT.

9. Sanact did not agree to many of the essential terms in the SUBCONTRACTOR AGREEMENT. Sanact made significant changes to

the document on November 12, 2015. US Pipelining never signed the proposed agreement either in its original form or as modified.

**THERE IS AN ENFORCEABLE CONTRACT BETWEEN SANACT AND US PIPELINING**

10. The Court finds that Sanact and US Pipelining entered into a contract.

11. A contract is enforceable if there is an offer, an acceptance, and consideration. Shoppe v. Gucci Am., Inc., 14 P.3d 1049, 1065 (Haw. 2000).

12. An offer is the manifestation of willingness to enter into a bargain to justify another party in understanding that his assent to that bargain is invited and will conclude it. Restatement (2d) of Contracts § 24 (1979). In August 2015, US Pipelining made an offer to Sanact to perform cleaning of the pipes at the Property.

13. Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer. Restatement (Second) of Contracts § 50. Sanact accepted the offer by performing the work requested by US Pipelining at the Property and did so from September 2, 2015 through November 9, 2015.

14. Consideration is a bargained-for exchange. Douglass v. Pflueger Haw., Inc., 135 P.3d 129, 143 (Haw. 2006). Consideration exists where something has been parted with by the promisee and received by the promisor in exchange for a benefit

based upon the manifested intention of the parties.  2 <u>Corbin on Contracts</u> § 5.8 (1994) (citing <u>Bard v. Kent</u>, 122 P.2d 8 (Cal. 1942)).  Consideration may consist of a performance or a return promise.  Restatement (2d) Contracts § 71 (1979).
Sanact performed the work requested by US Pipelining and US Pipelining received the benefit of the work and owes payment to Sanact in full for the work performed.

    15.  A contract must be certain and definite as to its essential terms.  <u>Boteilho v. Boteilho</u>, 564 P.2d 144, 146 (Haw. 1977).  The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.  <u>Almeida v. Almeida</u>, 669 P.2d 174, 179 (Haw. App. 1983).  The invoices provided to US Pipelining by Sanact set forth that US Pipelining agreed to pay Sanact at a rate of $150.00 per hour for each laborer for the first eight hours of work and $172.50 per hour after eight hours of work. (Exhibit 2).

    16.  There was mutual assent as to the essential terms of the contract evidenced by US Pipelining having paid Sanact, without objection, at the rates specified in the invoices for work completed from September 2, 2015 through October 5, 2015.

    17.  US Pipelining breached the contract when it did not pay Sanact for the work Sanact performed from October 6, 2015 through November 9, 2015.

    18.  US Pipelining claims that the Parties' agreement required that Sanact would be subject to a pay-when-paid

provision whereby Sanact would receive payment from US Pipelining once US Pipelining received payment from the contractor Johnson Controls, Inc.

19. The contract did not include an agreement that Sanact would receive payment on a "pay-when-paid" basis.

20. The October 27 and December 21, 2015 telephone conversations between US Pipelining and Sanact employees and the November 20, 2015 voicemail from Jeremy Bowman did not create an additional term to the contract. The communications provide no evidence of an agreement to modify the prior contract between Sanact and US Pipelining.

21. New, additional consideration is required for the valid formation of a modification or subsequent agreement. Honolulu Fed. Sav. And Loan Ass'n v. Murphy, 753 P.2d 807, 813-14 (Haw. App. 1988). A promise to perform an existing legal obligation is not valid consideration. EHP Corp. v. Hendlin, 2001 Haw. App. LEXIS 6, *13 (Haw. App. Jan. 16, 2001) (citing 17 C.J.S. Contracts § 100 at 827-28 (1953)).

22. An attempt to introduce a "pay-when-paid" condition would require additional consideration to modify the existing contract.

23. There was no additional consideration provided to Sanact to be paid on a "pay-when-paid" basis. There was no new consideration because US Pipelining was already required to pay Sanact for the work performed from October 6, 2015 through November 9, 2015.

24. US Pipelining began paying in compliance with the Parties' agreement. US Pipelining paid for the work that was completed by Sanact from September 2, 2015 through October 5, 2015. US Pipelining made partial payments to US Pipelining on October 1, 2015, October 5, 2015, and October 28, 2015 for work completed by Sanact from September 2, 2015 through October 5, 2015.

25. US Pipelining breached the Parties' agreement when it did not pay Sanact for the work completed from October 6, 2015 through November 9, 2015.

26. US Pipelining owes Sanact the amount of $123,203.16 for work performed by Sanact from October 6, 2015 through November 9, 2015.

**PREJUDGMENT INTEREST**

27. The Court has discretion to award prejudgment interest in equity to correct injustice when a judgment is delayed for a long period of time for any reason. Schmidt v. Bd. of Dirs. of Ass'n of Apartment Owners of Marco Polo Apartments, 836 P.2d 479, 484 (Haw. 1992).

28. In a diversity action, state law determines the rate of prejudgment interest. Barranco v. 3d Sys. Corp., 307 F.Supp.3d 1075, 1102-03 (D. Haw. 2018).

29. Hawaii Revised Statutes § 478-2 provides that "[w]hen there is no express written contract fixing a different rate of interest, interest shall be allowed at the rate of ten per cent a

year...."

30. The Parties did not have an express written contract fixing a different rate of prejudgment interest. The invoices Sanact sent to US Pipelining do not constitute separate contracts. Invoices cannot on their own create a contract or add terms to a contract. Custom Coasters Int'l, Inc. v. R.E. Coulter Crane & Rigging, Inc., 2002 WL 31555442, *3 (Cal. App. Nov. 18, 2002); C9 Ventures v. SVC-West, L.P., 136 Cal.Rptr.3d 550, 564 (Cal. App. 2012). "The prevailing rule is that an invoice, standing alone, is not a contract." Indian Paint & Lacquer Co. v. United Steel Prod. Corp., 267 P.2d 408, 416 (Cal. App. 1954).

31. The Ninth Circuit Court of Appeals has explained that in order for the party to be bound by an additional term in an invoice, the party must evidence an affirmative assent to the term and do more than merely perform its obligations under the parties' contractual agreement. Chateau des Charmes Wines Ltd. v. Sabate USA Inc., 328 F.3d 528, 531 (9th Cir. 2003). The appellate court found in Chateau des Charmes that the failure of the party to object to the additional term in the invoice was insufficient to bind the party to the additional term where the party was already bound to perform in accordance with the existing contract. Id.

32. Sanact has not met its burden to prove the existence of an "express written contract fixing a different rate of interest" as required by Haw. Rev. Stat. § 478-2. The rate of prejudgment interest is limited to 10% a year. Haw. Rev. Stat. § 478-2.

17

33. Hawaii Revised Statutes § 636-16 provides that in awarding interest in a civil case, the Court "is authorized to designate the commencement date to conform with the circumstances of each case, provided that the earliest commencement date in cases ... arising by breach of contract, it may be the date when the breach first occurred."

34. Prejudgment interest is awarded beginning on December 9, 2015. December 9, 2015 is thirty days after Sanact had completed its work on November 9, 2015.

35. Sanact is entitled to recover prejudgment interest at a rate of 10% a year beginning on December 9, 2015.

**ASSUMPSIT**

36. Assumpsit is a common form of action which allows for the recovery of damages for the non-performance of a contract, either express or implied, written or verbal, as well as quasi-contractual obligations. Leslie v. Estate of Tavares, 994 P.2d 1047, 1051 (Haw. 2000).

37. This case involves the non-performance of a contract. The prevailing party may seek attorneys' fees pursuant to Hawaii Revised Statutes § 607-14.

38. Sanact is the prevailing party and is entitled to attorneys' fees in assumpsit pursuant to Haw. Rev. Stat. § 607-14.

39. Haw. Rev. Stat. § 607-14 provides that an award of attorneys' fees in assumpsit "shall not exceed twenty-five per

18

cent of the judgment."

40. Sanact shall file a Motion for Attorneys' Fees and Related Non-taxable Expenses pursuant to Haw. Rev. Stat. § 607-14, Federal Rule of Civil Procedure 54, and District of Hawaii Local Rule 54.3, within 14 days of entry of judgment.

**POST-JUDGMENT INTEREST**

41. An award of post-judgment interest is procedural in nature and is dictated by federal law. <u>Am. Tel. & Tel. Co. v. United Computer Sys., Inc.</u>, 98 F.3d 1206, 1209 (9th Cir. 1996).

42. The rate of post-judgment interest is governed by 28 U.S.C. § 1961, which provides: "Such interest shall be calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

43. Sanact is entitled to recover post-judgment interest as provided in 28 U.S.C. § 1961.

**DECISION AND ORDER**

Based upon the evidence and the Findings of Fact and Conclusions of Law stated herein, it is hereby **ORDERED, ADJUDGED AND DECREED**:

1. Sanact and US Pipelining entered into a binding

contract.

2. US Pipelining breached the contract when it failed to pay Sanact for the work Sanact performed from October 6, 2015 through November 9, 2015.

3. Sanact is entitled to judgment against US Pipelining in the amount of $123,203.16.

4. Sanact is entitled to recover prejudgment interest at a rate of 10% a year beginning on December 9, 2015.

5. Sanact is the prevailing party and is entitled to attorneys' fees in assumpsit pursuant to Haw. Rev. Stat. § 607-14. Sanact shall file a Motion for Attorneys' Fees and Related Non-taxable Expenses within 14 days of entry of judgment.

6. Sanact is entitled to recover post-judgment interest as set forth in 28 U.S.C. § 1961.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 26, 2018.



Helen Gillmor
United States District Judge

Sanact, Inc. v. US Pipelining LLC; Civ. No. 16-00377 HG-RLP; **FINDING OF FACT, CONCLUSIONS OF LAW, AND ORDER**